Good morning. May it please the Court, Paul O'Rourke on behalf of all of the appellants. The appellants are the plaintiffs in two underlying wrongful death lawsuits. They have a very real interest in the Praetorian policy. They're potential judgment creditors of U.S. Tire. As a result of U.S. Tire's filing of a bankruptcy, their recovery is limited to whatever insurance proceeds are against U.S. Tire and Wheel, or at least recovering anything from them is through the insurance policy, which is Praetorian. We're here because Praetorian sold a garage liability policy to a used tire dealer that contains a used tire exclusion. Could I start by asking you more of a, I guess, a procedural posture question. I had some difficulty figuring out who was suing whom for what, and the Tate's claim and motion for summary judgment, which was denied, and that's on appeal here, was that Praetorian had a duty to defend. Is that correct? It's not a duty to defend and indemnify, but a duty to defend. Yes, a duty to defend, Your Honor. The reason being, Praetorian filed a motion for summary judgment. If there's no duty to defend by definition, there's no duty to indemnify. That's very clear. So what's confusing is, of course, Tate couldn't enforce Praetorian's duty to defend U.S. T.W. They wouldn't have an interest in that. So it's peculiar that they're moving for summary judgment on that basis. Help me understand whether that is something Tate can do, given that they don't really have an interest in Praetorian's duty to defend U.S. T.W. against Tate's claims. They have two points, Your Honor. They have certainly an interest in opposing Praetorian's motion for summary judgment. I think we're clear there. But in terms of the motion for partial summary judgment on the duty to defend, the duty to defend really is just potential for coverage. Tate and Quintero are interested in coverage, obviously. They want indemnity, ultimately, under this policy. Therefore, if there is a duty to defend, that's an acknowledgment by the Court that there is a potential for coverage under the policy. If there's a potential for coverage under the policy, then there is the potential ability to recover indemnity once there is a judgment against U.S. Tire and Wheel. So that's why I know it's framed as the duty to defend. Part of it is to impress upon the Court the very broad standard of the duty to defend, which, again, equates to potential for coverage. That was the basis for filing the motion for partial summary judgment on the duty to defend issue, because the U.S. — I'm sorry. The appellants could not have filed a motion for summary judgment based on indemnity because there's been no judgment yet against U.S. Tire. And in Montrose v. Admirals, footnote 9, the Court made very clear that indemnity is not an issue until after there's actually a judgment against the insured. So the state case against USCW is still pending? It is still pending. It stayed, actually, Your Honor. Because of the bankruptcy. I thought that was over in 2017. I apologize, Your Honor. It's not stayed because of the bankruptcy. The bankruptcy court gave relief from the state to the appellants so that they could pursue the state court action against U.S. Tire and Wheel to recover whatever — ultimately to recover whatever insurance assets there are. The trial court in Los Angeles stayed that action until after the outcome of this Ninth Circuit appeal. Oh, okay. I see. Praetorian moved — if I recall, I'm not part of that action, but I believe Praetorian moved to stay that action, the tort action, until after this appeal has concluded. Okay. Thank you. Oh, you're welcome. Well, while we're on that, I don't understand why there has been no assignment of the duty to defend to Tate. Right. And there was no discharge in the bankruptcy. Yes. So, the tire company is — I was going to say alive and well. It's alive. It's not well. And so, they have an interest in the duty to defend, and they've made no assignment. How can Tate have any interest, then, in the duty to defend? And therefore, is that even a proper part of this case? I believe the duty to defend is a proper part of the case. There hasn't been an assignment, Your Honor. USTW doesn't have a real interest in the duty to defend in the sense that any recovery against them is limited to insurance assets that are available. So, it's not as if they're going to have personal exposure. The duty to defend runs personally to the insured, and the case law is all one way on that. I understand it's the insured. That's the duty to defend. Again, I'm looking at it from the potential-for-coverage perspective. It's clear that the appellants here have an interest in the policy. I think that's very clear. The issue, in terms of the duty to defend, is a determination by a court that there is a potential-for-coverage under the policy. Clearly, that's an issue with respect to Praetorian's motion for summary judgment. Praetorian's motion for summary judgment pivots on the duty to defend. Again, indemnity can't be determined at this time, because if Praetorian can prove there's no duty to defend, then, by definition, there's no duty to indemnify. That's why Praetorian filed the motion for summary judgment. I understand that, but I don't see why you have to go along. You say it's convenient for you to go along that both issues are before this court, because the duty to defend is broader than the duty to indemnify, and so if you went on that, then you went on everything. If we went on the issue that there's a duty to defend, that doesn't necessarily determine indemnity. That's determined after there's actually a judgment against U.S. Tire and to defend, we had to argue that in opposing the summary judgment filed by Praetorian, because if we didn't oppose it on the duty to defend, then the Court would say, well, there's no duty to defend, and there's no duty to indemnify. Appellants, your argument — Unless the Court said, well, that duty to defend is not properly before us because there's been no assignment, correct? I — yes, but I would respectfully disagree with that, Your Honor. Even though the insurer gets defended, the issue is, again, they're trying to seek a determination that they have no obligations under the policy. I understand that. So the issue pivots on whether there's a potential for coverage. That's really clearly what there is. Is there a potential for coverage? That's measured by the duty to defend standard, which is very well established. But, you know, certainly this Court has the ability to see this case only as a indemnification case, in that if there is a possibility that there could be recovery, then this Court could not say that Praetorians should prevail on the duty to indemnify claim under declaratory judgment, and it's over. And you go back to state court, and you litigate it, and they either defend them or they don't. If they defend them, then they're fulfilling their obligation. If they don't defend them, then you can get a big, fat judgment and file a judgment case against them. Anyway, Your Honor, that was — that's how I would address the duty to defend issue. All right. So the reason we're here, again, is because the type of exclusion that's at issue. It's clear that there's factual disputes, as the district court acknowledged, that the exclusion, 50 percent of our business involves the sale and installation of new tires. And had we known about that exclusion, we wouldn't have purchased the policy, which makes sense. So in terms of the potential for coverage and why it's covered, the exclusion itself focuses on the nature of the risk posed by used tires as opposed to new tires. We believe the allegations in the case involve conduct on the part of U.S. Tire and Wheels, that doesn't go towards the nature of the tires themselves. Obviously, there's defect allegations against the manufacturers. But against U.S. Tire and Wheel, the focus is on the sale and installation of the wrong type of tire, the wrong size of tire, the negligent placement of the tires, and the age of the tires. So there's no dispute that any negligent installation, sale and installation of tires, say new tires, is covered by the insurance policy. Is that correct? I don't believe Praetorian would dispute that. If, in fact, there was negligence in the sale and placement of new tires that were the wrong size, the wrong type, I would suspect that Praetorian would agree the used tire exclusion wouldn't apply. I believe Praetorian But garage operations covers that sort of activity. Yes, Your Honor. The garage liability policy would cover that. Praetorian's position is that because of that exclusion, they don't cover liability arising out of the sale and installation of only used tires and recapped tires. Recapped tires are not at issue here. So presumably if they were new tires, if we were dealing with the same type of case involving negligent sale and installation but they were brand new tires, we wouldn't be here. So did Carlson, Carlson was the Tate's expert. Yes, Your Honor. Did he testify that independently the wrong size and type of tire such as occurred here could have been an independent cause of the rollover even if those wrong sized and wrong typed tires were new? His testimony, as I recall, Your Honor, which the record is at 99 and 100 pages, 99 and 100, was that the age and the size of tire would have contributed to the tire tread and outer belt separation and that the tire placement and type would have contributed to the rollover. That was his testimony. Age is covered by the exclusion. You have to acknowledge that, right? It's certainly a better argument, Your Honor, yes. Although technically, Your Honor, I understand the point. A tire can be 6 years old and never used, so, but I understand the correlation between age and used, Your Honor. And you do agree that exclusion is very, very broad? I don't agree that it's as broad as alleged by Appelli, by Praetorian. I believe that exclusions have to be narrowly interpreted and they also have to be liberally construed in favor of coverage. That's what California law says, right? Yes, that's Meraz v. Farmers, for example, says that exclusions are strictly construed against the insurance company and liberally interpreted in favor of the insured. So just to follow up on Judge Murphy's question, as you said, Carlson's, the expert testimony was that these other allegedly negligent activities contributed to the accident. But he didn't say, did he, that it would have happened even if the tires had not been used tires? I'm not sure he was asked if this would have happened if there were new tires. No, his report actually says that the negligent acts by U.S. Tire and Wheel caused this loss regardless of whether they were used or unused tires. That's at, I think, 953 in the This is so regardless of whether we were dealing with used or unused tires. I believe, again, that's 953. But I'm still unclear. Is it a combination of size and type or only size or only type that could have contributed to the cause or been an independent reason for the cause, for the rollover? I believe, Your Honor, that the rollover, as I read his report, he testified clearly it was type and placement that caused the rollover. But if you look at his report, it's also type and size because the type of tire was an all-season tire here. And all-season tires place higher lateral pressure on the tires. Therefore, you needed a lower-profile tire. And so I think, and if it were going to be a higher-profile tire like this, it I think it's a combination, frankly, Your Honor, as I read his report. Again, that's 951 and 953 in the record. It's a combination of size and type that would have contributed to the rollover. Given his report, isn't it just a tribal issue of fact as to whether there was a — this could have been a separate cause, an independent cause? Yes. I apologize, Your Honor. Yes. Is that right? There's tribal issues along those lines, yes. Because there's tribal issues along those lines, California law is clear that there's potential for coverage. There's a duty to defend. Whenever there's a factual dispute that's relevant to coverage by definition, there's a potential for covered liability and therefore a duty to defend. And here, there are a lot of factual issues. Therefore, for that reason, the summary judgment by — Praetorian summary judgment should not have been granted because I don't believe that you can say by there's undisputed facts which establish there's no potential for coverage. Just the opposite.  Did you — Carlson's testimony also combined the type of tire and the placement of it. Yes. Placement has to do with age, though, doesn't it? Because if you have different age tires, you put either the younger on the front or the younger on the back for placement. Isn't that true? I would address — yeah, it's the newer wheels — newer tires are supposed to be a correlation with why you'd say that's used. Let me just say, though, again, a tire could be six years old and never used. Okay? A tire could sit there in a factory — So a tire company should have in their inventory log on new tires how long they've been in their inventory so that they can safely place the new tires that have been in inventory for three years in the front and those that have been in the inventory for five years on the back. Is that your theory? Yeah. I think, Your Honor, that the age of the tire could be known and the newer tires placed in the front. But the important thing is here, in terms of the exclusion itself, and if you read Praetorian's position, it's the nature of the risk presented by a used tire as a used tire. When you put placement, that has to do with human error in not putting the newer tires on the back. I understand why you might believe there's a correlation, but because exclusions are narrowly construed and liberally construed in favor of insurers, I think that there should be a potential for coverage even based on that placement theory. And, again, this is, again, all about a potential for coverage, and this is really about a used tire exclusion that was placed on a policy insuring a used tire dealer. And without any kind of knowledge, without any awareness on the part of the insurers that this exclusion was part of the policy. Now, the agent says otherwise. You're over your time. There's a factual dispute. You're over your time. I'm sorry. I'll give you a minute for rebuttal. Thank you very much. Thank you. Good morning. May it please the Court, Gary Sullivan for the Appley Praetorian Insurance Company. This is, as Your Honor pointed out, a very, very broadly worded exclusion. Could you just, I want to clarify for my own understanding the procedural issues that Judge Murphy brought up. Certainly. There was no assignment here, right? Correct. But you brought the Tates in, as I understand it, because they clearly have an interest in this policy. Correct. Under California law, you wanted them in this case. I wanted a binding adjudication that there was no coverage whatsoever, no duty to defend as to the policyholder, no duty to indemnify as the policyholder, and binding the potential judgment credit. And nobody ever raised any issue with that with the district court. Is that correct? No, because it is under California law accepted practice to bring in the underlying plaintiffs as a stakeholder and interest holder. In a duty to defend situation? In a duty to indemnify, and this lawsuit encompassed both. We sought a declaration that there was no duty to defend and a declaration there was no duty to indemnify, and by obtaining the law… Well, the duty to indemnify usually comes later, correct? Well, no. The duty to defend establishes whether there is an obligation to defend the policyholder. But if there is no duty to defend, there is no duty… I meant duty to indemnify. All right. If there's no duty to defend and that's established at the outset, there is no duty to indemnify, and that's what insurance companies typically do in state and federal court to bind the potential judgment creditors as occurred here. So you do obtain an adjudication of the duty to indemnify because there is no potential for coverage. It being broader that there is a duty to defend, if there is none, then there is no duty to indemnify. Well, there's authority in the California Insurance Code, I think it's 11580B2, for joining somebody like Tate in a duty to indemnify case. What authority do you have that allows you to join Tate on a duty to defend case when there has been no assignment of that duty? The duty to defend is not relevant as to Tate, and our assertion is that 11580 does apply if there's a judgment creditor, and therefore the duty to indemnify is both ripe and mature as to Tate's and U.S. Tire and Wheel. Are you saying then that your duty to defend, notwithstanding the breadth of the pleading as to Tate, really has nothing to do with Tate and Tate is really not a participant in that claim? It has an interest in the outcome because if there is a determination that there is no duty to defend, per se there is no duty to indemnify. But doesn't it require an assignment from the insured of the duty to defend in order for Tate to have any interest in that? In the defense, yes, and the reason that I'm framing the question the way I am is, the duty to defend is personal to the insured, but you bind the potential judgment creditor by including them in the lawsuit, and the declaratory relief seeks a determination that there's no duty to indemnify. So they have a direct interest in that, and they're properly— Their interest is only limited to the duty to indemnify, which is sort of raised— Which is correct, but that is subsumed by a determination there's no duty to defend. Is there any case on point in California that has a similar procedural posture? Legions of them that address naming a potential judgment creditor, naming the underlying plaintiff so you can obtain an adjudication that there is no coverage, no potential for coverage, and I think we've cited that in our brief, and I can turn to it. But the issue, as Your Honor points out, is truly the duty to indemnify as to Tate's, but because of the court's finding below that there is no duty to defend, and they had an interest in that determination because that would, per se, terminate any duty to indemnify, they're properly before the court. To me, the issue is one of concurrent cause, and I appreciate the court's concerns about the procedural issues, but the trial court below got it right. Let me ask this. Did you have an expert that—much like the expert Carlson for Tate's? No. So the only expert testimony we have here on causation is from Carlson? That's correct, and that's because Carlson's testimony, even taken on its face as extrinsic evidence, doesn't obligate the insurance company to defend because it doesn't create a separate instrumentality necessary to place this claim outside of the broad-use tire exclusion. So opposing counsel says that the expert, if I heard him right, that the expert did say that the negligence in selection placement of the tires would have caused the accident whether or not the tires were used or not. Is that correct? Not quite correct. What he's saying is there are a combination of factors that caused the tread to fail. What caused the accident was a four- to five-foot tread separation on the tire that caused the Explorer to roll over. So whether it's the loading, the selection of the size of the tire, the age of the tire, the used tire, his testimony is the tire tread separated. The tire tread is, per se, a four- to five-foot strip that comes off of the used tire that was sold by the insured to the underlying plaintiffs, to the Tates. And this is why the issue of concurrent causation is so critical because there is only one instrumentality, and that's the tire failure. And the breadth, as Your Honor pointed out, it isn't just limited to if there is a used tire that fails and it would have failed if it was a new tire. The facts of this case drive whether there's a duty to defend or indemnify. And this policy excludes both defects and installation, which would be the tire itself and the man-made factors of selecting what tire do I install, where do I install it, do I install it in the front or the back. It excludes any injuries which arise out of the installation and arise out of it. Wait a minute. Where do you get that? I don't get that. It says arising out of a defect in or failure of one or more tires and then goes on about the used. He's talking about the failure of the tire. Which was not new and sold or installed. So if I install a tire which is not new, and that's undisputably the fact here, and I have a bodily injury that arises out of that failure, as is the case here, then the exclusion applies unless there is something separate and apart from the tire. And if you install a tire that's not the right size, not the right tread? And it's a new tire? No. If it's the wrong size tire, it is the wrong placement of the tire, it still arises out of the failure of the tire. You're giving an awfully broad reading. Well, arising out of under California law means. Well, when you're dealing with exclusions arising under, it gets a narrow reading. No. Arising out of an exclusions and under the coverage grant. My understanding in Partridge and a couple of other cases, you give a narrow reading to exclusionary clauses. That's a different issue than arising out of. Yes, you interpret exclusionary clauses more narrowly than you do coverage grants. The words arising out of in both exclusions and in coverage grants is extremely broad. And if you look at the Sciufi case, it talks about having. I think you're giving it probably a broader reading than I understand California law to give. Arising out of under California law in an exclusion, and if you look at all of the cases that cite it and Sciufi and shepherdizing the 50 or more cases that follow it, arising means having any connection with or relationship to. Let me try it a different way. In terms of notification to the insured about what the exclusion is, the title of the exclusion is important, correct? So you need to put it in bold print or all caps, like occurred here, right? As occurred here. Yes. All right. And that caption says use tires and recap tires exclusion. It doesn't say anything about exclusion for installation, does it? The caption is meant to draw the attention to the reader of the text below. So once it draws attention, it falls out of the equation, doesn't make any difference what it says? No. Then you look at the text. You can't put at the top the entire text of the exclusion. I understand that. Thank you. So the text of the exclusion is what determines whether or not it applies. And this is a broad layer. All right. And where in the text does it exclude negligent acts of installation or selection of the tire? If it fails and it was installed by the insured on the second line. But it has to be not new. It's not new when it was sold or installed. That's what the installed relates to. Correct. This tire was not new when it was sold and not new when it was installed. Right. And it is an injury that arises out of the sale. Can I ask you about Partridge, which I found confusing? So they come up with a hypothetical. That's where you have the gun that's been tampered with and the car that's been driven negligently. And neither one by themselves would have caused the injury, but together they caused the injury. And the court says we'll analyze this as two separate actions, and each of them would have separate coverage. Because if the two things had been done by a different person or there were different insurance policies, you would get coverage for both. So applying that here, if USTW had a separate policy differential for negligent installation and somebody sued USTW for both the use of used tires and for negligence, under Partridge would both of them have been covered? No. Why is that? Because if you look at the instrumentalities at issue in Partridge, I had two distinct instrumentalities in Partridge. I have a hair trigger gun that's been filed, and I've got a vehicle. Here I have one tire. Whether it was installed or sold, it is the tire that failed. And whether it arises out of separate acts of negligence, as you have in Evanston v. Attain and the cases cited therein, they really address what is it required to have separate instrumentalities. And there you have a kid runs from grandma's care behind the car. Grandpa runs over the grandchild. The argument is I have the negligence of grandma, which is absolutely unrelated to the vehicle. She's not driving it. She doesn't have the ability to use it, operate it, or control. And I've got the grandfather, and the attempt was there to invoke coverage under the homeowners for the separate acts of negligence. And the court said, no, you have one instrumentality. You have one cause of the injury. There it was, the vehicle. Here it's the used tire. The two farmers' cases do the same thing. There is no separate act of negligence that's unrelated to the tire. I think I understood Carlson's opinion to state that the selection of the oversized tire with the wrong kind of thread, what he was explaining, itself could have caused the car to roll over. But what caused the tire? I mean, what caused the rollover? That's the only question that matters, whether it was negligently selected, negligently installed. The failure was of a used tire. And why does an insurance company not want to right that risk because of precisely what happened here? Well, I guess my point is it seems that on summary judgment like this, as Judge Murphy pointed out, Carlson's was the only expert evidence that was presented. And you have to construe it in the light most favorable to the non-moving party. But he doesn't come up with any. And if you do that, and as I read Partridge, you read the exclusions narrowly. I don't see why he doesn't at least, his affidavit doesn't at least create a genuine tribal issue of that. And the problem that I had with the district court's order, if you go to his order, he says at the end, here, any of the alleged negligence could only have caused the accident to occur by first causing the tire to fail. And because the used tire exclusion is not limited to injuries caused by a tire's status as used, the fact that the accident's immediate cause was the tire's failure brings defendant's injuries within the used tire exemption for liability arising out of a failure. What he's doing is making a factual determination. And that's not proper on summary judgment. I agree if he were making a factual determination. What he's really doing is making a legal determination that there are a multitude of things that went into the tire failure. Well, you say there can be only one cause. Well, there can be a hundred causes. What is the final culminating result? Unlike Partridge, where you have two separate independent causes, here you don't have two separate independent causes. You have one tire failure. And unless the two causes of the loss are unrelated, there's no dependency between the two, Partridge doesn't come into play. And Partridge actually says that. So it's not a factual determination. It's that whether it was loading or selection of the tire. What did he do with Carlson's testimony? Carlson's testimony simply. . . You can't just disregard it.  I think he's absolutely correct that the ultimate result of. . . He says any possible negligence on the part of USTW is intrinsically linked to the tire's failure. How can he possibly make a finding like that in light of Carlson's testimony? Because the only issue here for coverage purposes is there something that is not related to the tire, that has to be independent of the tire to trigger the Partridge analysis. His conclusion is simply Carlson comes up with a myriad of factors of why this tire failed. But what is the cause of the accident? The cause of the accident is a strip four or five feet long came off of a used tire. He doesn't say anything about that the four or five foot strip came off of some other tire, or that the accident occurred for reasons unrelated to the tire. For example, he talks about criticisms that where you place the tires, as Your Honor was pointing out, whether they're three years or five years old, all goes into the ultimate event, which is the tire separation. So the court below, the trial court, was correct in saying there is one cause of the accident. While there are a myriad of things that may have gone into that, they're not independent and separate from the tire, much as you have in the Farmer's cases, or Evanston, or indeed Partridge, where you analyze what caused the accident. There's one single event, as Carlson acknowledges, which is when this tire shreds, when the Explorer is going down the freeway at 60 miles an hour, it goes into a rollover. Okay. Thank you. Thank you, Your Honor. It's over your time. Thank you. I know I only have a minute. I believe there are factual issues here. I believe the declaration of Dennis Carlson creates factual issues. I believe you just can't look at this as – Praetorians looking at this as a failure of tires. This was a failure of a tire in a rollover accident, and Dennis Carlson gave opinions regarding what negligent acts would have caused the rollover. In my view, that is a concurrent cause issue that is the Partridge case, and I believe there are factual issues and that the determination by the district court judge that it was only a tire failure is wading into factual disputes that I think should be left to a trier of fact and are not appropriate for summary judgment. Thank you. The matter is submitted.
judges: Murphy, Paez, Ikuta